UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KEVIN CHARLES,<br>         Plaintiff,<br><br>         v.<br><br>BRANDON CHARTIER, and<br>MCGARVEY TOWING,<br>         Defendants. | No. 25-cv-10529-DLC |

**MEMORANDUM AND ORDER ON PENDING MOTIONS**

CABELL, U.S.M.J.

### Introduction

Plaintiff Kevin Charles contends that Massachusetts State Police Trooper Brandon Chartier violated his rights during a traffic stop that culminated in Charles' arrest and the towing of his car. Charles initiated this action by filing an original complaint against (1) the Massachusetts State Police (MSP), (2) MSP Trooper Chartier, and (3) McGarvey Towing, the company that towed his car, but then filed an amended (operative) complaint which, among other things, dropped the MSP as a defendant. (D. 1, 27). Three motions pend against this backdrop: (1) McGarvey Towing moves to dismiss the original complaint (D. 17); (2) the MSP moves to dismiss the original complaint (D. 25); and (3) Charles moves for leave to file yet a second amended complaint (D. 29).

The two motions to dismiss are moot because the filing of the amended complaint rendered the original complaint null and void and thus mooted any pending related motions to dismiss it. *See e.g., Connectu LLC v. Zuckerberg*, 522 F.3d 82, 96 (1st Cir. 2008); *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003). Independently, the MSP's motion to dismiss is moot because Charles dropped the MSP as a defendant when he filed the amended complaint. The court will accordingly deny the two motions to dismiss as moot.[1]

---

[1] To be clear, although McGarvey Towing apparently consents to Charles' filing of the proposed second amended complaint, it argued in its now-moot motion to dismiss, and presumably would continue to argue, that assuming the case is dismissed against Trooper Chartier, it should also be dismissed against McGarvey Towing, because subject matter jurisdiction is based on federal question jurisdiction, and the only federal claim asserted in this case is the section 1983 claim against Trooper Chartier. As such, the court would lack subject matter jurisdiction to hear the state common law claims against it were the section 1983 claim to go away. *See e.g., Yaghoobi v. Tufts Medical Center, Inc.*, 762 F.Supp.3d 85, 97 (D. Mass. 2025); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The court agrees with the proposition, but it is not implicated here because, as discussed *infra*, the court finds that the proposed second amended complaint pleads a valid section 1983 claim. Moreover, the proposed complaint now also alleges diversity and an amount in controversy exceeding $75,000 as a basis for federal court jurisdiction. To be sure, McGarvey Towing argues that it should be dismissed from any suit against Trooper Chartier regardless of whether there is jurisdiction over it, because the claims against the defendants do not arise from a common nucleus of facts. While this argument is not patently unreasonable, at this juncture the court finds on balance that they do. Even accepting that the core claim against each defendant focuses on different, distinct events, they do arise generally from the same event and there may be some overlap of mutually relevant conduct where the same piece of discovery could be relevant as to both defendants. The proposed complaint avers, for example, that McGarvey Towing acted at Trooper Chartier's direction and was present when the plaintiff's car was searched at the MSP barracks in Revere.

All of that said, the court will read the proposed amended complaint to assert just a single claim of conversion against McGarvey Towing. The plaintiff purports to bring separate claims for conversion (count two) and conversion involving intentional and malicious conduct (count three), but Massachusetts common law does not recognize a separate cause of action for a conversion that is committed intentionally and maliciously. On the contrary, every alleged conversion must involve conduct that is intentional and knowingly wrongful.

Regarding the plaintiff's motion for leave to file a second amended complaint, he purports to "clarify factual allegations, refine claims, and ensure that all pleadings are accurate and reflect the current legal details of the case." (D. 29). Federal Rule of Civil Procedure 15(a) instructs that a party seeking to file a second amended complaint may do so "only with the opposing party's written consent or the court's leave."  Here, the court credits the plaintiff's representations that he sought the defendants' consent, and that McGarvey Towing consents to the proposed amendments, but Trooper Chartier does not.  Trooper Chartier has in fact filed an opposition to the motion.  (D. 32). Having reviewed the parties' submissions, the court will grant the plaintiff's motion for leave to file the second amended complaint, in part.

**Legal Framework**

Ordinarily, leave to amend is "freely given when justice so requires" absent an adequate basis to deny amendment, such as futility, bad faith, undue delay or a dilatory motive. *Maine State Building and Construction Trades Council, AFLCIO v. United States Department of Labor*, 359 F.3d 14, 19 (1st Cir. 2004); *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996).  "An

---

*See e.g., Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).  Even if the malicious nature of a defendant's conduct could bear on damages, it would not give rise to a separate, second conversion claim.

3

amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." *Menard v. CSX Transp., Inc.*, 840 F.Supp.2d 421, 427 (D. Mass. 2012); *accord Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted"). To survive a Rule 12(b)(6) motion to dismiss, the proposed claims must include factual allegations that when taken as true demonstrate a plausible claim to relief, even if actual proof of the facts is improbable. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007). Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller,* 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted). "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," *id.* at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Here, the plaintiff contends that leave to amend should be given because he has not acted with undue delay or bad faith, there would be no undue prejudice to the defendants, and amendment is not futile because the complaint pleads valid claims. In

opposition, Trooper Chartier argues that amendment would be futile. The court thus focuses on that issue.

### The Proposed Second Amended Complaint

According to the proposed second amended complaint, the plaintiff was driving to a friend's house on an evening in November 2023 when he entered an intersection "on a changing yellow and red light." (D. 29-1, ¶ 10). Trooper Chartier then pursued and approached the plaintiff on foot at a left-turn signal light, ordered the plaintiff to exit the vehicle, conducted a pat-down search of plaintiff and then handcuffed him, and did all of this without explaining why he stopped or searched the plaintiff. (D. 29-1, ¶ 11).

Trooper Chartier subsequently brought the plaintiff to his police vehicle and conducted another pat-down search without the plaintiff's consent. (D. 29-1, ¶ 12). Trooper Chartier informed the plaintiff that his car would be towed for having an expired registration and proceeded to conduct a warrantless search of the vehicle and destroy some of the plaintiff's property in the process. (D. 29-1, ¶ 13).

Trooper Chartier at some point subsequently discovered an ammunition magazine inside a locked firearms box. (D. 29-1, ¶ 14). He then called McGarvey to tow the car to the MSP's Revere Beach Barracks, where the plaintiff alleges that further searches

5

and property damage occurred.  *Id.*  The plaintiff was thereafter jailed for three nights.  (D. 29-1, ¶ 16)

Meanwhile, after the second search of the vehicle, McGarvey towed the plaintiff's car to their facility in Saugus, Massachusetts.  (D. 29-1, ¶ 15).  Following his release on bond, the plaintiff attempted to recover his vehicle but McGarvey refused to release it unless he paid a presumably unwarranted amount, and McGarvey subsequently held the plaintiff's vehicle for over a year, significantly diminishing its value.  (D. 29-1, ¶¶ 18-19).  All criminal and civil charges against the plaintiff were eventually dismissed.  (D. 29-1, ¶ 20).

The proposed second amended complaint asserts two claims against each defendant.  As to Trooper Chartier, Count One alleges under 42 U.S.C. § 1983 that Trooper Chartier violated the plaintiff's rights under the Fourth and Fifth Amendment of the U.S. Constitution by searching his car and arresting him without just cause.  Count Four alleges that Trooper Chartier falsely imprisoned and unlawfully detained the plaintiff where he caused the plaintiff to be "det[ained] for three days without presenting the complaint to a magistrate to ensure probable cause determination within 48 hours."  Regarding McGarvey Towing, Count Two charges it with conversion and Count Three charges it with conversion involving intentional and malicious conduct.

6

**Discussion**

In arguing futility, Trooper Chartier argues that the plaintiff cannot show that Trooper Chartier violated his federal rights because the plaintiff admits that he entered the intersection in violation of state law, which in turn gave Trooper Chartier cause to conduct a traffic stop. Trooper Chartier contends that this, along with the subsequent discovery that the plaintiff's registration was expired, gave him the right to arrest the plaintiff and search the plaintiff's car pursuant to official MSP policy. As such, so Trooper Chartier argues, he cannot be found to have violated the plaintiff's rights. Relatedly, Trooper Chartier argues that he is entitled to qualified immunity where the facts fail to show that he violated the plaintiff's federal rights.

The court does not find the defendant's argument persuasive at this early juncture for two reasons. First, the court does not agree that the plaintiff admits that he violated the law when he "entered the intersection on a changing yellow and red light." The state regulation the defendant cites to, 946 CMR, § 5.09, instructs that a driver approaching an intersection where the light is yellow "shall stop at such point unless so close to the intersection that a stop cannot made in safety." The defendant extrapolates that he would have been permitted to pull the plaintiff over for a motor vehicle infraction assuming the

7

plaintiff admits that he drove through an intersection when the light was yellow.  But per the regulation, a vehicle entering the intersection would not need to stop if it were so close that a stop could not be made in safety.  Even assuming the proposed complaint is read to admit that the plaintiff entered the intersection on a yellow light, it does not admit that the plaintiff could have stopped safely, and the court has no basis to assume the same.  Trooper Chartier contends that additional body and dashboard camera evidence will show that his actions were justified but he acknowledges that such evidence is "not ripe for review at this juncture."  As such, the court cannot agree that the proposed complaint admits to conduct that justified Trooper Chartier's subsequent conduct.

Second, even assuming *arguendo* that Trooper Chartier was authorized to stop the plaintiff's vehicle, the proposed complaint alleges that he independently took actions that were excessive and unreasonable where he summarily "ordered the plaintiff out of his car, conducted a 'pat-down' search, and handcuffed him without an explanation of probable cause," and then conducted another pat-down search after walking the plaintiff to his vehicle.  In this regard, it appears to be undisputed that that the plaintiff's registration was expired, but the proposed complaint appears to allege that Trooper Chartier may have taken some of these actions before that fact was known.  *See* D. 29-1, ¶¶ 11-13.

8

Consequently, even assuming Trooper Chartier was entitled to conduct a traffic stop, such that the stop itself would provide no basis for Charles to seek redress, the proposed complaint would still continue to allege that Trooper Chartier used excessive force and effected an arrest without probable cause.  Discovery may vindicate Trooper Chartier's position; he contends after all that video evidence will support his narrative.  But for now, the court cannot agree that the proposed complaint fails to allege a valid section 1983 claim.

And because Trooper Chartier's opposition to the plaintiff's proposed unlawful imprisonment claim is based on similar grounds, it too for now survives 12(b)(6) scrutiny, but only to the limited extent it alleges that Trooper Chartier knowingly caused the plaintiff to be held in custody, at all, without cause.  The court does not find the plaintiff's three-day delay in being brought before a court to be actionable against Trooper Chartier on these allegations.  Massachusetts Rule of Criminal Procedure 7 provides that a "defendant who has been arrested and is not released shall be brought for arraignment before a court if then in session, and if not, at its next session."  Mass. R. Crim. P. 7.  Here, the plaintiff was arrested on the evening of November 17, 2023, a Friday, and was brought to court for arraignment on November 20, 2023, the following Monday, at 9:00am.  (D. 27-4, p. 2).  That would appear to accord with both the word and spirit of Rule 7.

*Id.; see also Jenkins v. Chief Justice of Dist. Court Dep't*, 416 Mass. 221, 224-25 (1993) ("If the arrest occurs on a Friday, the arrestee remains in custody for the duration of the weekend.").[2]

**Conclusion**

In light of the foregoing, Defendant, McGarvey Towing's Motion to Dismiss (D. 17) is **DENIED** as moot; Defendant Massachusetts State Police's Motion to Dismiss Plaintiff's Complaint (D. 25) is **DENIED** as moot; and plaintiff's Motion for Leave to File Second Amended Complaint (D. 29) is **ALLOWED IN PART**; the second amended complaint shall assert a section 1983 claim and an unlawful imprisonment claim against Trooper Chartier, and shall assert a single claim of conversion against McGarvey Towing.

                                                     /s/ Donald L. Cabell
                                                DONALD L. CABELL, U.S.M.J.

DATED: January 5, 2026

---

[2] Trooper Chartier urges the court to find that he is entitled to qualified immunity on all claims against him. The qualified immunity doctrine shields public officials from liability for civil rights violations if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The salient question is "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violate[d] that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Creighton*, 483 U.S. at 640). Even assuming Trooper Chartier may ultimately be able to advance a non-frivolous claim of qualified immunity, the court declines to consider the claim now on an undeveloped record. At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309, (1996) (emphasis original). As such, "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage." *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010).

10